No. 2163

Second Circuit

---

## ARMISTEAD v. HANEY

---

(April 8, 1927.   Opinion and Decree.)
(May 13, 1927.   Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana   Digest — Action — Par.   53; Pleading—Par. 60.**

A suit brought to enforce an obligation not yet matured will be dismissed with-

out prejudice to the plaintiff to renew his action when the obligation matures. Code of Practice, Article 158.

Egan vs. Fush, 47 La. Ann. 742, 539.

Hewitt vs. Williams, 47 La. Ann. 742, 17 South. 269.

State Nat. Bk. vs. N. O. Brewing Assn., 49 La. Ann. 934, 22 South. 48.

Sondheimer Co. vs. Richland Lumber Co., 121 La. 786, 46 South. 806.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Red River.

Action by W. R. Armistead against J. S. Haney.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

John F. Stephens, of Coushatta, attorney for plaintiff, appellant.

Nettles & Bethard, of Coushatta, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit aided by provisional seizure filed August 30, 1923, to recover judgment for $1286.02, balance claimed to be owing on the price of a sawmill sold by plaintiffs to defendant and money advanced by plaintiff to defendant to enable him to operate the mill.

Plaintiff conditionally sold defendant a sawmill for $2975.00, to be paid as follows: Out of the price of all lumber manufactured and sold by defendant plaintiff was to receive, when collected, as a payment on the debt, $5.00 for each thousand feet, board measure. The debt was not to bear interest.

Subsequently additional advance was made by plaintiff to defendant to be paid for in like manner. As security for the payment of the latter advances defendant pledged to plaintiff a mortgage note on real estate for the amount of $1000.00.

The total debits amounted to $2645.43 and the credits to $1359.41, leaving a balance owing of $1286.02.

This suit was filed before the maturity of the debt.

Before answering defendant moved that plaintiff's suit be dismissed as premature. This motion was referred to the merits. Reserving his rights under this motion defendant answered, denying liability, and assuming the character of plaintiff in reconvention defendant prayed judgment against plaintiff for $1915.34, of which amount $750.00 is for damages alleged to have been sustained by the illegal issuance of the writ of provisional seizure and $1165.34 moneys alleged to have been paid by him to plaintiff in error.

On these issues the case was tried and there was judgment dismissing plaintiff's suit as premature and dissolving the writ of provisional seizure.

The plaintiff was taxed with the costs.

The plaintiff appealed.

OPINION

Plaintiff and defendant entered into a contract reading as follows:

"State of Louisiana,
"Parish of Caddo.

"Know all men by these presents that for the consideration and upon the terms and conditions hereinafter set forth, W. R. Armistead, of Red River Parish, Louisiana, has this day and does by these presents agree and bind himself, his heirs and legal representatives, to sell, transfer, convey and deliver with good title, clear of encumbrances, unto J. S. Haney, of Caddo Parish, his heirs or assigns, the entire sawmill and plant now known as the Armi-

stead mill and situated in Red River Parish, about four miles approximately southeast of East Point, complete, as it stands today, with the exception of the blacksmith shop located on the premises, and not including any wagons or teams.

"The consideration of this sale is to be the price and sum of twenty-nine hundred and seventy-five ($2975.00) dollars, payable as hereinafter set forth, and without interest.

"The said Haney is to take possession of said property, including the land on which it is located, immediately, and proceed to operate the same continuously up to its capacity, except for strikes, accidents, breakdowns, and unavoidable causes, and every invoice or draft for lumber sold by him from said mill shall be by him endorsed over to the Bank of Coushatta, and as soon as collected the said bank is to deduct from the proceeds five dollars on each one thousand feet B. M. of the lumber covered by such invoice or draft, and deposit said sum to the credit of said Armistead, all of which amounts shall go as credits on the purchase price above stated, but without interest. This arrangement shall continue in effect and be carried out by the parties until said amounts so credited to the said Armistead in said bank shall equal the said purchase price, and then the said Armistead, his heirs or legal representatives, shall, upon demand, execute and deliver to the said Haney, his heirs or assigns, proper act of conveyance, selling, transferring and delivering the said sawmill by good title, clear of incumbrances, in consideration of the said price so paid as above stated.

"It is further agreed that the said Haney, his heirs or assigns, shall have the use, free of rent, for ten years from date of the land upon which the said sawmill and accessories are located.

"It is further agreed that the said Haney will saw and dress for said Armistead not exceeding 30,000 feet, B. M., of lumber for a house pattern, at cost, including timber, logging and manufacturing.

"In case the said Haney shall fail or refuse to perform the obligations assumed by him in this contract, he shall pay and forfeit to the said Armistead the sum of two hundred dollars ($200.00) as liquidated damages.

"Thus done and signed before the undersigned notary and two competent witnesses, February 24, A. D. 1923.

"Witnesses:
(Signed)   "JAMES L. DORMAN.
(Signed)   "BILL PETERS.
    (Signed)   "W. R. ARMISTEAD.
    (Signed)   "J. S. HANEY.
        (Signed)   "R. G. CHANDLER,
                         "Notary Public."

Subsequently they entered into another contract in words and figures as follows:

"State of Louisiana,
"Parish of Caddo.

"Be it remembered that J. S. Haney, married to Miss Mammie Harper, is operating a sawmill in Red River Parish, Louisiana, and under contracts heretofore made with W. R. Armistead, a resident of Red River Parish, Louisiana, he is obligated to pay him sums aggregating $8.00 per 1000 feet for all lumber cut, sawed and sold, as will appear by said contracts which are in no wise modified, changed or altered by this agreement, but remain in full force and virtue.

"However, it is necessary for the said Haney to obtain advances from the said Armistead to enable him to operate said sawmill business, and that he has this day executed a special mortgage on lot 5 of Block "E" of Liberty Heights of Caddo Parish, Louisiana, with improvements thereon, for $1000.00, evidenced by one note payable six months after date, bearing 8 per cent interest from maturity.

"Now it is agreed between the parties that the said Haney shall pay to the said Armistead an additional $5.00 per 1000 feet for all lumber cut, sawed and sold by him in Red River Parish to be applied as a credit on whatever amount may be advanced by the said Armistead on the aforesaid mortgage note, it being understood that the said Armistead shall advance him from time to time on said collateral security, but there shall be paid him in addition to the contract hereinabove stated $5.00 per 1000 feet out of the lumber manufactured and sold, and in default of so doing said mortgage note shall ipso facto become due and payable.

"Done and signed on this, the 19th day of May, 1923, before the undersigned witnesses.

"Witnesses:
(Signed) "D. BAKER,
Signed) "C. O. FERGUSON.
　　(Signed) "J. S. HANEY.
　　(Signed) "W. R. ARMISTEAD.
　　(Signed) "W. A. WILKINSON,
　　　　　　　　　　"Notary Public."

The $8.00 per 1000 feet, board measure, that defendant was under obligation to pay plaintiff as above stated was the $5.00 per 1000 feet board measure to go as a credit on the price of the sawmill and $3.00 per 1000 feet "stumpage" or price of the timber converted into lumber, which timber belonged to plaintiff and was sold to defendant by him on that basis.

Plaintiff, W. R. Armistead, testified, pages 40, 41, 42, 44, 45:

"Q. Isn't it a fact that Mr. Haney under the contract was not to make payment to you until the lumber was cut, sold and collected for?
"A. Yes, sir; that is the way the contract reads.

＊　＊　＊　＊

"Q. He was to pay you one hundred cents (100c) on each dollar for all lumber cut and sold and collected for?
"A. After he took this one thousand dollars ($1000.00) up.
"Q. Then you made a contract, according to your version, whereby Mr. Haney was to pay you for the advances that you claim to have made to his laborers by paying you all of the money collected when the lumber was sold and collected for?
"A. Yes, sir.
"Q. That was the way that this account was to be paid for?
"A. After this one thousand dollars ($1000.00) was expended; the rest of the money, if he sold fifty dollars or one hundred dollars, I was to get it.
"Q. That was the way that you agreed that the amount you advanced was to be paid?
"A. Above the one thousand dollars.

"Q. Above the one thousand dollars ($1000.00)?
"A. Yes, sir.
"Q. You are positive you were to receive payment as the lumber was out, sold and collected for?
"A. Very positive.

＊　＊　＊　＊

"Q. Then the only difference between the verbal and the written contract is that you were to receive more money under the old contract?
"A. Yes, sir.
"Q. The time and manner of payment was not changed one iota except that you were to receive more money?
"A. Yes, sir.
"Q. You were to receive your money as the lumber was cut, sold, manufactured and paid for—collected for, were you not?
"A. Yes, sir.
"Q. You were not to receive any money until it was cut, sold, manufactured and paid for?
"A. No, sir; he told me he didn't have it.

＊　＊　＊　＊

"Q. You agreed to advance him all of this money upon the proposition that he was to pay you as the lumber was cut, sold, manufactured and paid for?
"A. Yes, sir.

＊　＊　＊　＊

"Q. Well, when he asked you about paying these laborers, or when you did pay these laborers off, was there anything said as to when that would be paid?
"A. They were to be paid.
"Q. And when were you to be paid back your money?
"A. As the lumber was sold.
"Q. Well, if the lumber was never sold, you were not to get paid?
"A. No; but the understanding was that if I was to put up the money he would get the lumber on the market right away. He went to Shreveport to get prices but they didn't suit him; he thought he could sell in Missouri or Texas better.
"Q. Your understanding was that he was to get the lumber on the market right away to pay you for what you had advanced the laborers?
"A. Yes, sir.
"Q. You paid their accounts?
"A. Yes, sir.

"Q. Isn't it a fact that you made a number of money advances to Mr. Haney?

"A. I advanced him to the extent of one thousand dollars ($1000.00) and over.

\* \* \* \*

"Q. And then you advanced him on what you termed to be his pay roll?

"A. Yes, sir.

"Q. You were to receive payment from these accounts—when the lumber was sold and collected for?

"A. Yes, sir, that was all the way I could look for my money. He told me that he had a contract to sell a special kind of flooring in Kansas City. I told him I would be glad to have him, but he didn't want to.

"Q. You have stated that you had a contract by which you were to receive payment of all the money that you advanced him when the lumber was sold and collected for?

"A. That was the only way I looked for my money.

"Q. That was the only way you expected your money?

"A. Yes, sir.

"Q. That was the contract under and by which you were to receive your money?

"A. Yes, sir; he told me he didn't have —his expression was: 'I haven't got the money to tie up in such sums as that.' After paying his pay roll he wanted me to advance him twenty-five dollars per month for his personal use; so that was the time I quit putting up for him."

The defendant, J. S. Haney, testified, pages 68, 69:

"Q. How was the maturity and the time of payment of all advances made to you by Mr. Armistead fixed?

"A. Every one of them under our contracts, the pay-roll money and everything, was to be paid for when my lumber was sold and paid for; and it was not due until the amount was paid to me, for it was all to go through the Bank of Coushatta, and they would be the trustee to distribute every bit.

\* \* \* \*

"Q. No account was payable or became due until you collected the money?

"A. Until the bank received the money; the bank to do the dividing and all the collecting. The bank was to do the col-lecting and the dividing and it was not due until they did get it.

"Q. Have you made an effort to remove or steal any of the lumber in that mill site?

"A. Not a plank, nowhere.

"Q. Have you rendered Mr. Armistead a copy of all invoices?

"A. No, sir; I wasn't to do that under my contract. I started out—here is the way I started out. He didn't ask for a copy to start with and I didn't make him any. The thing went on some little while and he asked me for a copy and I told him yes and gave him a copy on every-thing."

Under this evidence we conclude that plaintiff's demand was clearly premature and the decision of the lower court on this point is correct.

Plaintiff insists that he has a privilege on the logs and lumber sequestered for the amount paid by him to the laborers who converted the standing timber into logs and lumber.

Privileges are stricti juris and exist only where the law has expressly created them.

Plaintiff testified, pages 48, 53:

"Q. Their accounts were due every week, were they not?

"A. Weekly.

"Q. Due weekly?

"A. Yes, sir; I paid them once a week.

"Q. And under the rules they were working their pay was due every week?

"A. Yes, sir; I helped them; hired the hands and told them I would pay them off to work and that I would see that they got their money until I quit.

\* \* \* \*

"Q. When you went over to the mill, Mr. Armistead, and started to hiring and firing the laborers, you practicaly took charge, did you not?

"A. No, sir. I took charge this far— they were not working for him, wouldn't work; there were negroes lying around there that he owed and hasn't paid today, I don't think, so far as I know, at least he hadn't paid them then. I said to him be-

fore I had this talk with him and I asked him how about it, and he asked me how about me hiring the labor; I got the price of labor to cut by the thousand and I got the negroes to cut in the woods so that the log haulers could haul the logs, and I got the day labor in the mill."

Under this evidence the laborers were not working for the defendant, J. S. Haney, who was operating the mill, but for the plaintiff, W. R. Armistead, and under the plain provisions of the law no privilege arose in favor of the plaintiff on the logs or lumber for the money he advanced to pay the laborers whose labor produced the logs and lumber; and furthermore, plaintiff, having hired the laborers and having paid them, their privilege, if any ever existed, was thereby extinguished.

Therefore the judgment dissolving the writ of provisional seizure was correct.

Defendant asked for damages for wrongful seizure of his property, but none were allowed him by the lower court. Inasmuch as the defendant did not appeal from the judgment nor move in this court to amend it, it cannot be disturbed on that point.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.